UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA and SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>    Plaintiffs,<br><br>v.<br><br>MARY KATHERINE RUSSELL, an individual; ANTELOPE MOUNTAIN RESORT, LLC, an Idaho limited liability company; ELIZABETH RUSSELL, an individual; TAMBER SPEARS, individually and in her capacity as Administrator of the ESTATE OF DAVID M. FLAGET; SHANNON FLAGET HALL, an individual; CHRISTINE WAGNER, an individual; BRIAN RANDALL, an individual; PATRICK LEACH, an individual; OLY MORRIS, an individual; BRITTNEY CORNWELL, an individual; KENDY FREEMAN, an individual; COLLEEN CARR, an individual; James D. RUSSELL, an individual,<br><br>    Defendants. | Case No. 2:23-cv-00238-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

    Pending before the Court is (1) Plaintiffs Safeco Insurance Company of America and Safeco Insurance Company of Illinois' (collectively "Safeco") Motion for Summary Judgment (Dkt. 38) and (2) the Russell Defendants' Cross-Motion for Partial Summary Judgment[1] (Dkt. 43). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal

---

[1] The Russell Defendants include Mary Russell; Elizabeth Russell; and Antelope Mountain Resort, LLC. Although Safeco originally named Robert David and Liann Russell as defendants, they have been dismissed from the case and Safeco's motion as to them is moot (Dkt. 55).

MEMORANDUM DECISION AND ORDER - 1

argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court grants Safeco's summary judgment motion and denies Defendants' cross-motion. Further, the Court also denies Defendant's request to defer considering summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure and Defendant Mary Russell's request for attorney fees.

## I. BACKGROUND

James D. Russell ("JDR") was arrested and prosecuted for murdering David Flaget. *State v. Russell*, No. CR09-21-3993 (1st Jud. Dist. Ct. Idaho, Bonner County). Despite the horrific nature of the murder, JDR was found competent to stand trial, pled guilty to second-degree murder, and was sentenced to life in prison (Dkt. 38-2, ¶¶ 9-11). Following the criminal prosecution, Flaget's estate and other parties related to Flaget sued JDR and the Russell Defendants in state court (Dkt. 28-21); *see Spears, et al. v. Antelope Mountain Resort, LLC, et al.*, No. CV09-23-1379 (1st Jud. Dist. Idaho, Bonner County). The state court complaint against the Russell Defendants (the "underlying complaint") contains detailed allegations and provides the following background.

JDR is trained in two forms of martial arts, Brazilian jiu-jitsu and judo (Dkt. 28-21, ¶ 3.19). During a martial arts exhibition, JDR suffered a traumatic brain injury (*id.*, ¶ 3.20). As a result, he spent weeks in a coma; awoke with long-term brain damage; and suffers from acute psychosis, schizophrenia, and bipolar disorder (*id.*, ¶¶ 3.21-3.24). Because of his mental health issues, JDR is often paranoid, violent, and aggressive towards others (*id.*, ¶ 3.25). He has attacked, intimidated, or threatened other individuals on more than one occasion (*id.*, ¶¶ 3.26, 3.39, 3.52).

In May 2021, JDR was arrested in California for violent conduct related to his mental health issues (*id.*, ¶ 3.37). During that incident, JDR's father called 911 to report JDR was violent, manic, and about to attack him and JDR's brothers (*id.*, ¶ 3.26). Law enforcement determined that JDR said he wanted to cut chunks of his skin with a knife, was starving himself to cure his brain, had been off his medication for four years, and had previously been physically aggressive with his father (*id.*, ¶ 3.28). Consequently, JDR was placed on an involuntary hold in California (*id.*, ¶¶ 3.28-29). Before being taken into custody, JDR attacked the arresting officers; subduing him required seven men; and while being arrested, JDR bit an officer (*id.*, ¶¶ 3.33-35).

After JDR's release from jail in California, members of his family—including Robert David, his father; Liann, his mother; and Mary, his grandmother—"conferred" regarding what to do with JDR and "agreed and decided to move" him to Bonner County, Idaho, to live on the "Russell Family Compound" (*id.*, ¶¶ 3.41-43). The Russell Family Compound consists of three adjoining parcels owned by either Mary or her real estate holding company, Defendant Antelope Mountain Resort, LLC ("Antelope Mountain")[2] (Dkt. 38-2, ¶¶ 14, 15).

After moving JDR to the Russell Family Compound, Mary "observed and received complaints [about JDR's] violent, paranoid behavior" (Dkt. 28-21, ¶¶ 3.44, 3.49). For example, groundskeepers at the Compound repeatedly reported they feared JDR. Flaget was one of those groundskeepers (*id.*, ¶ 3.48). Flaget complained to Mary that JDR kept aggressively approaching him, regularly accused him of trespassing, threatened him, and aggressively cornered him (*id.*, ¶¶ 3.49, 3.50). In December 2020, JDR attacked two groundskeepers requiring police intervention

---

[2] The parties do not differentiate between Mary and Antelope Mountain. Because the parties do not distinguish between them, the Court analyzes them together.

**MEMORANDUM DECISION AND ORDER - 3**

(*id.*, ¶¶ 3.52-55). Also, a housekeeper for the Compound resigned because she feared JDR (*id.*, ¶¶ 3.58-3.60).

The underlying complaint alleges Mary knew JDR posed a threat but failed to take any action to warn or to protect Flaget (*id.*, ¶¶ 3.48, 3.50, 3.66-68). Specifically, the complaint alleges that Mary was "[m]ore concerned with maintaining the pristine appearance of the Compound than with [Flaget's] safety" and that "Mary and Antelope Mountain continually encouraged and instructed [Flaget] to come to the Compound, tend to the grounds, and hope to be spared by [JDR]" (*id.*, ¶ 3.69). At some point between May and September 9, 2021, Mary, along with JDR's mother and father, allegedly determined JDR "was so psychotic and dangerous they needed to involuntarily move him off the Compound and commit him to a mental hospital"; "agreed and made plans to have [JDR] committed in or about September 2021"; but "failed to take any measures to warn or protect [Flaget] from [JDR] in the interim" (*id.*, ¶¶ 3.72-75).

Tragically, on September 10, 2021, JDR murdered Flaget, believing Flaget was trespassing on the Russell Family Compound (*id.*, ¶¶ 3.76–3.85). JDR then mutilated, paraded, and cannibalized the body (*id.*). Based on these allegations, the underlying complaint alleges claims against Mary, Robert David, Liann, Elizabeth (JDR's aunt), and Antelope Mountain for wrongful death under the theories of negligent, reckless, wanton, and willful conduct and of premises liability; intentional infliction of emotional distress; negligent infliction of emotional distress; and loss of society and companionship (*id.*, ¶¶ 4.1-4.42, ¶¶ 4.48-4.53).

At issue in this case are the interpretations of twelve Safeco insurance policies, each of which were issued to Mary and provide some degree of personal liability coverage (Dkt. 38-2 at ¶¶ 34-45). Ten of these policies are homeowner's policies or landlord policies associated with property in Idaho (Dkts. 40-1–40-10). Additionally, Safeco issued Mary a condominium insurance

MEMORANDUM DECISION AND ORDER - 4

policy for property she personally owned in Spokane, Washington ("the Condo policy") and an umbrella policy providing excess coverage ("the Umbrella policy") (Dkts. 40-11, 40-12).

Except for the Umbrella policy, each insurance policy contains the following provision regarding Safeco's coverage for personal liability:

> If a claim is made or a suit is brought against any ***insured*** for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:
> 1. pay up to our limit of liability for the damages for which the ***insured*** is legally liable; and
> 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.

(*E.g.*, Dkt. 40-1 at 38) (emphasis in original).[3] Every policy defines an "occurrence" as "an accident (*e.g.*, *id.* at 48). None of them, however, defines an "accident."

The Russell Defendants tendered their defense of the underlying complaint to Safeco, which accepted the tender but reserved its rights to file this action challenging its duty to defend and its duty to indemnify them. Safeco seeks declaratory judgment that it does not owe any duty to the Russell Defendants under any of the twelve policies[4] (*see generally* Dkt. 28). Safeco moves for summary judgment assuming Idaho law applies to all the policies (Dkt. 38-1). Based on this assumption, Safeco notes that determining whether conduct constitutes an accident or occurrence for purpose of insurance coverage under Idaho law is based on "the nature of the injury-causing event" (*id.* at 17) (citing *Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 414 P.3d 1194, 1198 (Idaho

---

[3] The Umbrella policy does not contain this exact provision, but like the other policies, it provides personal liability coverage in certain circumstances for "bodily injury" caused by an "occurrence" where an occurrence is an accident (Dkt. 40-12 at 13).

[4] Safeco argues JDR's intentional conduct of murdering Flaget is not an occurrence under the policies (Dkt. 38-1 at 14). By not responding to the argument, the Russell Defendants concede the insurance policies do not provide coverage for JDR. Accordingly, the Court does not address whether the policies cover JDR.

**MEMORANDUM DECISION AND ORDER - 5**

2018)). Under this approach, Safeco argues JDR's intentional conduct is not an occurrence under the policies (*id.*).

The Russell Defendants oppose Safeco's summary judgment motion and cross-move for partial summary judgment. They assert that, contrary to Safeco's assumption, Washington law governs the Condo and Umbrella policies; Washington law considers whether an event is an "occurrence" from the insured's perspective; and under that law, Mary's alleged negligence is a covered "occurrence" because she did not intend or expect JDR to murder Flaget (Dkt. 43 at 10) (citing *Unigard v. Spokane School Dist.*, 579 P.2d 1015, 1019 (Wash. Ct. App. 1978)) (holding policy covered insured parents whose child intentionally set fire), *overruled in part Rodriguez v. Williams*, 729 P.2d 627 (1986) (en banc).

Further, the Russell Defendants argue there is a genuine issue of material fact whether Flaget's murder constitutes an "occurrence" under those policies which Idaho law governs. Specifically, they argue that the evidence indicates JDR may have lacked the mental capacity to act intentionally at the time of the murder, making the murder an accident for purposes of the policies (*id.* at 14) (citing *Rajspic v. Nationwide Mut. Ins. Co.*, 718 P.2d 1167, 1170 (Idaho 1986)). Alternatively, the Russell Defendants argue the Court should defer a summary judgment ruling under Rule 56(d) until discovery is complete (*id.* at 17).

## II.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

When the parties submit cross-motions for summary judgment, the trial court must consider the merits of each motion separately and review the evidence submitted in support of each cross-motion. *See Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Even

if both parties assert there are no contested issues of material fact, the court still has the responsibility to independently make that determination. *See id.* (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

### III. ANALYSIS

#### A. Choice-of-Law

Safeco moves for summary judgment under the assumption that Idaho law governs all the policies (*see generally* Dkt. 38-1). In response, however, the Russell Defendants argue Washington law governs the Condo and Umbrella policies to determine whether Safeco owes Mary a duty to defend (Dkt. 43 at 5-13). In diversity cases, federal courts apply the choice-of-law rules of the forum state to determine state law questions. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022). Under Idaho law, the "most significant relationship test," set forth in § 188 of the Restatement (Second) of Conflict of Law, applies to resolve the choice-of-law questions involving the interpretation of an insurance contract. *Ryals v. State Farm Mut. Auto. Ins. Co.*, 1 P.3d 803, 805-06 (Idaho 2000).

The factors for consideration under the most significant relationship test include: (a) the place of contracting; (b) the place of the contract's negotiation; (c) the place of performance; (d) the location of the contract's subject matter; and (e) the parties' domicile, residence, nationality, place of incorporation, and place of business. *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85-86 (Idaho 1995) (listing factors under § 188). The court evaluates these factors in light of broader policy concerns including: (a) the needs of the interstate and international systems; (b) the forum's relevant policies; (c) the relevant policies of other interested states and the relative interests of those states in determining the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty,

predictability and uniformity of the result; and (g) ease in determining and applying the applicable law. *Id.* at 85 n.1.

Applying § 188, the Court determines Washington has the most significant relationship to the Condo and Umbrella policies. For example, Mary's condo was in Washington; she resided in Washington when she purchased the Condo policy; Washington has a strong interest in regulating insurance contracts within its borders; and Mary states she expected Washington law would apply to the policies. Although the facts relating to the Umbrella Policy are less conclusive, Mary purchased the insurance in Washington while she lived in Washington and states she understood Washington law would govern it, and it contains Washington-specific addendums which support Mary's belief. Accordingly, Washington law applies to determine whether Safeco owes Mary a duty to defend and a duty to indemnify under the Condo and Umbrella policies.

To avoid this conclusion, Safeco asserts § 193 of the Restatement (Second) of Conflict of Law applies in lieu of § 188 because Mary argues the Condo and Umbrella policies "cover risks in multiple states" (Dkt. 52 at 16). Section 193 "applies to contracts of fire insurance, surety insurance and the various kinds of casualty insurance, such as theft insurance, liability insurance, collision insurance, workmen's compensation insurance, and fidelity insurance [because] there may be no principal location of the insured risk in the case of contracts for the insurance of things, such as ships, trucks, airplanes and railroad cars, that are constantly on the move from state to state." RESTATEMENT (SECOND) OF CONFLICT OF LAW § 193 (1971). In support of Safeco's argument that § 193 instead of § 188 applies to resolve the choice-of-law issue, Safeco cites Washington case law applying Washington's choice-of-law rules (Dkt. 52 at 17).

Here, however, Idaho's choice-of-law rules apply. Safeco cites no authority that Idaho courts have adopted § 193 for purposes of such an analysis. Regardless, even when concluding

**MEMORANDUM DECISION AND ORDER - 9**

Washington law applies under § 188 to determine whether Safeco owes Mary a duty to defend under the Condo or Umbrella policies, the Court concludes Safeco does not have such a duty.

### B. The Condo or Umbrella Policies

Under Washington law, the duty to defend is broader than the duty to indemnify. *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) (en banc). An insurer has a duty to defend when a complaint against the insured alleges facts which could, if proven, impose liability on the insured within the policy's coverage. *Id*. An insurer is not relieved of its duty unless the policy clearly does not cover the claim alleged. *Id*. In other words, the duty to defend is triggered if a policy conceivably covers the complaint's allegations. *Id*. Meanwhile, the narrower duty to indemnify arises only if the policy actually covers the insured's liability. *Id.* Generally, a court determines the duty to defend only from the complaint. *Id*.

"Determining whether coverage exists is a 2-step process." *McDonald v. State Farm Fire & Casualty Co.*, 837 P.2d 1000, 1003 (Wash. 1992) (en banc). The insured must show the loss falls within the scope of the policy's insured losses. *Id.* at 1003-04. If the insured meets this burden, then the insurer must show the policy's specific language excludes the loss to avoid coverage. *Id.* at 1004.

In this case, whether the loss falls within the policy's scope depends on whether there was an occurrence, which all the policies define as an "accident." Where, as here, the policies do not define "accident," Washington courts apply the common law definition. *Grange Ins. Ass'n v. Roberts*, 320 P.3d 77, 87 (Wash. Ct. App. 2013). Washington's common law definition of "accident" includes an unusual, unexpected, and unforeseen happening and a loss that happens without design, intent, or obvious motivation. *United Servs. Auto Ass'n v. Speed*, 317 P.3d 532, 539 (Wash. Ct. App. 2014).

**MEMORANDUM DECISION AND ORDER - 10**

Further, the incident is not an accident if the insured knew or should have known facts from which a prudent person would conclude the injurious consequences are reasonably foreseeable. *Lloyd v. First Farwest Life Ins. Co.*, 773 P.2d 426, 428 (Wash. Ct. App. 1989); *see also Kitsap Rifle & Revolver Club v. Northland Ins. Co.*, No. C11-5021 BHS, 2024 WL 866814, at *8 (W.D. Wash. Feb. 29, 2024) ("[W]here the insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable."); *Com. W. Ins. Co. v. Cisneros*, 2020 WL 2115849, at *4 (W.D. Wash. Apr. 16, 2020) (noting focus is on whether injury was reasonably foreseeable), *report and recommendation adopted*, No. C20-0109-RSM, 2020 WL 2113789 (W.D. Wash. May 4, 2020); *State Farm Fire and Casualty Co. v. El-Moslimany*, 178 F. Supp. 3d 1048, 1058 (W.D. Wash. 2016) ("Under Washington law, an incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded the harm was reasonably foreseeable."). In other words, the insured does not need to intend or to expect the injurious consequences of his actions. *Lloyd*, 773 P.2d at 428.

Whether an incident is an accident is an objective determination, not a subjective one. *Speed*, 317 P.3d at 539-40. The insured's perspective is not relevant because either an incident is an accident, or it is not. *Id.* at 540. Further, "[t]he mere fact the complaint includes the terms 'negligently' and 'reckless'" is not dispositive and "does not alter the clearly deliberate nature of the conduct alleged." *El-Moslimany*, 178 F. Supp. 3d at 1057 (discussing Washington common law meaning of accident); *Homesite Ins. Co. v. Schlackman*, 671 F. Supp. 3d 1205, 1213-14 (W.D. Wash. 2023) (noting whether claim is titled negligent or intentional is not dispositive); *Kitsap Rifle & Revolver Club*, No. C11-5021 BHS, 2024 WL 866814, at *8 (noting relevant question is whether underlying allegations, if proven, trigger coverage and focus is not on alleged causes of action).

**MEMORANDUM DECISION AND ORDER - 11**

As the Russell Defendants acknowledge, the issue is whether the underlying complaint's allegations against Mary constitute an "occurrence" under the Condo and Umbrella policies (Dkt. 43 at 9). The question turns on whether a reasonably prudent person would conclude the injurious consequences of Mary's alleged conduct were reasonably foreseeable. *See Homesite Ins. Co.*, 671 F. Supp. 3d at 1215 (considering whether "a prudent person would conclude that the injurious consequences . . . were reasonably foreseeable"). Viewing the underlying complaint's allegations objectively and liberally in Mary's favor, the Court concludes the consequences of Mary's conduct were neither unexpected nor unforeseeable.

According to the allegations, JDR is Mary's grandson, who had been a competitive powerlifter and had earned a brown belt in judo and Brazilian jiu-jitsu before suffering a traumatic, long-term brain injury (Dkt. 28-21 at ¶¶ 3.18-21). As a result of this injury, Mary knew JDR "had lost the ability to participate in society in a healthy and non-violent manner" (*id.* at ¶ 3.22). JDR was diagnosed with acute psychosis, schizophrenia, and bipolar disorder, and his mental illnesses "regularly and repeatedly manifested . . . in an intensely violent, aggressive and paranoid manner" (*id.* at ¶ 3.25).

After JDR committed several violent acts in California, Mary conferred with others about what to do with him and "agreed and decided" to move him to the Russell Family Compound (*id.* at ¶¶ 3.42-.43). After moving him to the Compound, Mary observed JDR's violent, paranoid behavior and received numerous complaints about that behavior (*id.* at ¶ 3.44). The housekeeper and groundskeepers, including Flaget, "routinely reported their fear of and encounters with [JDR]" (*id.* at ¶ 3.48). For example, Flaget "repeatedly informed [Mary] that [JDR] kept aggressively approaching him" and "regularly accusing him of trespassing, threatening him, and aggressively cornering him in tight spaces" (*id.* at ¶¶ 3.49-.50). Similarly, the housekeeper told Mary that JDR

had aggressively cornered her; she was so scared of JDR she carried bear spray and no longer cleaned alone; and she resigned because she feared JDR (*id.* at ¶¶ 3.57-.60).

Despite these reports, Mary dismissed the complaints about JDR's behavior. According to the allegations, she "repeatedly belittled, dismissed [and] ignored" Flaget's complaints, "continually encouraged and instructed [Flaget] to come to the Compound, tend to the grounds, and hope to be spared by [JDR]," and promised JDR was not a threat (*id.* at ¶¶ 3.68-.69, 3.75). Despite this assurance, however, Mary "determined [JDR] was so psychotic and dangerous" that she needed to move him off the Compound and have him involuntarily committed to a mental hospital; she made plans to do so; but she "failed to take any reasonable measure to warn or protect [Flaget] in the interim" (*id.* at ¶¶ 3.72-.75). Tragically, JDR murdered Flaget before Mary had JDR involuntarily committed.

Although the underlying complaint does not allege Mary intended the gruesome result of JDR's conduct, that is not the question. Rather, the inquiry is whether a reasonably prudent person would have foreseen the consequences of moving JDR to the Russell Family Compound; ignoring complaints about his violent, aggressive behavior; ultimately concluding he was too dangerous to remain on the Compound; but failing to warn or protect those at risk, including Flaget, before removing JDR from the Compound. A prudent person would not conclude that the consequences of Mary's conduct were unexpected and unforeseen; rather, a reasonable person would conclude the injurious consequences were foreseeable. Accordingly, Mary's conduct was not an accident; thus, it is not an occurrence under the policy; and Safeco does not have a duty to defend her under the Condo or Umbrella policies.

Contrary to the Russell Defendants' argument, *Unigard v. Spokane Sch. Dist.*, 579 P.2d 1015 (Wash. Ct. App. 1978), *overruled in part Rodriguez v. Williams*, 729 P.2d 627 (1986) (en

**MEMORANDUM DECISION AND ORDER - 13**

banc), does not require a different conclusion. Relying on *Unigard*, the Russell Defendants argue "the failure to warn and supervise, even the failure to warn about and supervise a person who commits an intentional tort, constitutes an 'occurrence' under Washington law" (Dkt. 43 at 10). The case does not stand for that proposition, however.

In *Unigard*, the underlying lawsuit alleged that a child negligently caused a fire damaging a school and that his parents had knowledge of the child's propensities and failed to supervise and control him. 579 P.2d at 1017. Unigard sought a declaratory judgment that it did not have a duty to defend or indemnify the parents. *Id.* In support, it relied on an exclusionary provision providing that the policy did not cover property damage which was "either expected or intended from the standpoint of the insured." *Id.* The court addressed whether this provision absolved Unigard from defending and indemnifying the parents, who did not intentionally cause the damage. *Id.* at 1018. The court ruled that "an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct." *Id.* at 1019.

Notably, the court in *Unigard* did not address whether the parent's failure to supervise the child constituted an occurrence (defined as an accident) under the policy. Rather, the court stated "there was no evidence of negligence on the part of the [parents]," and apparently assumed their conduct was an accident. *Id.* at 1018. Contrary to the Russell Defendants' suggestion, the court did not analyze the nature of the failure to supervise allegations against the parents or conclude that those allegations constituted an occurrence under Washington law.

In other words, *Unigard* does not address the first prong for determining coverage—whether the loss falls within the policy's scope because it resulted from an occurrence. Rather, the court in *Unigard* assumed this showing and only addressed the second prong—whether the policy specifically excluded the loss. Because *Unigard* did not analyze the first prong, this Court declines

**MEMORANDUM DECISION AND ORDER - 14**

to rely on it for the proposition that a failure to warn necessarily constitutes an occurrence under Washington law. Based on the underlying complaint's allegations in this case, Mary's alleged conduct is not an occurrence because the consequences of that conduct were reasonably foreseeable.[5]

### C. The Remaining Policies

The parties do not dispute that Idaho law governs the remaining ten insurance policies. For purposes of determining whether an occurrence constitutes an accident, Idaho courts have adopted the "nature of the injury-causing event" approach. *See Cook*, 414 P.3d at 1198 (citing 9 COUCH ON INS. § 127:21 (3d ed. 1997)). Under this approach, "negligence claims 'against an insured that directly arise out of the intentional act of a third party are not covered because the underlying causative act is not covered.'" *Id.* Applying this rule in *Cook*, the Idaho Supreme Court concluded that a third party's conduct of intentionally shooting the victim on the insureds' property was not a covered occurrence under the insureds' policy. *Id.*

Safeco argues *Cook* is dispositive in this case (Dkt. 38-1 at 17). Namely, it asserts the underlying complaint's allegations against the Russell Defendants arise directly out of JDR's intentional murder of Flaget, and this intentional, causative act is not covered under Idaho's nature of the injury-causing event approach. The Russell Defendants do not dispute Safeco's assertion that under *Cook*, JDR's intentional conduct is not a covered occurrence. Rather, they argue there is a genuine issue of material fact whether JDR's conduct was intentional; specifically, they argue a factual issue remains whether JDR lacked capacity to commit an intentional act (Dkt. 43 at 140).

---

[5] Mary requests attorney fees under Washington law for establishing coverage under the Condo and Umbrella policies (Dkt. 43 at 13). Because Mary fails to establish coverage, the Court denies her request for fees.

MEMORANDUM DECISION AND ORDER - 15

In support of their argument, the Russell Defendants rely on *Rajspic v. Nationwide Mut. Ins. Co.*, 718 P.2d 1167 (Idaho 1986). In that case, Rajspic shot Brownson but was acquitted of assault with a deadly weapon "on the ground of mental disease or defect excluding responsibility." *Id.* at 1168. Later, Brownson sued Rajspic, and Rajspic's insurer, Nationwide, defended her. *Id.* During that civil case, the parties stipulated Rajspic was "insane at the time of the shooting." *Id.* After a jury awarded Brownson damages, Nationwide denied coverage based on "a provision excluding coverage for injuries caused intentionally by or at the direction of the insured." *Id.* at 1168-69. After Rajspic sued Nationwide, it moved for summary judgment, and the trial court ruled that because the jury found "Rajspic had committed an intentional tort, [she was] collaterally estopped from litigating whether the injuries [she caused] would be covered by insurance." *Id.* at 1169.

On appeal, the Idaho Supreme Court in *Rajspic* noted that "an intentional tort and an intentional injury exclusion clause cannot be treated synonymously." *Id.* at 1170. Rather, it is possible that "an otherwise insane person may have sufficient capacity to understand and contemplate the nature and consequences of her actions," or alternatively, she "may be completely incapable of understanding the nature and consequences of her actions." *Id.* Because Rajspic's insanity was not litigated, the Court ruled that she could litigate the issue to determine the exclusion clause's applicability.

Contrary to the Russell Defendants' argument, *Rajspic* is inapposite in this case for at least two reasons. First, *Rajspic* addresses an exclusionary clause; it does not address the issue of whether conduct is an occurrence under a policy. Second, under *Cook*, an occurrence is determined based on the nature of the injury-causing event approach, and under that approach, allegations against the insured arising out of a third party's intentional conduct are not covered. 414 P.3d at

**MEMORANDUM DECISION AND ORDER - 16**

1198. Nothing in *Cook* suggests that this determination is a subjective one. The Russell Defendants do not cite any authority for the proposition that the third party must have subjectively intended the injurious consequences for his intentional conduct to be an occurrence under Idaho's nature of the injury-causing event approach. *Rajspic* does not support this proposition. Consequently, JDR's intentional conduct gives rise to the allegations against the Russell Defendants in the underlying case and do not constitute an occurrence under *Cook*. For this reason, Safeco does not have a duty to defend or to indemnify the Russell Defendants under the ten policies governed by Idaho law.

    **D.**    **The Russell Defendants' Rule 56(d) Request**

In the alternative, the Russell Defendants request the Court defer considering summary judgment under Rule 56(d) to allow them to develop their theory that JDR did not possess the mental capacity to commit an intentional act when he murdered Flaget (Dkt. 43 at 17). Because the Court concludes that JDR's subjective intent is not relevant to determine whether his intentional act constitutes an occurrence, the Court denies this request.

## IV. ORDER

**IT IS ORDERED that:**

    1.    Safeco's Motion for Summary Judgment (Dkt. 38) is **GRANTED**.

    2.    The Russell Defendants' Cross-Motion for Summary Judgment (Dkt. 43) is **DENIED**.

DATED: May 13, 2025

Amanda K. Brailsford
U.S. District Court Judge